03-2738-pr(L)
Dolphy v. Mantello

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: October 16, 2008        Decided: January 9, 2009)

Docket Nos. 03-2738-pr(L), 05-1206-pr(Con)

- - - - - - - - - - - - - - - - - - - - -x

Seth Dolphy,

                Petitioner-Appellant,

        - v.-

Dominic Mantello,

                Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - - -x

        Before:        JACOBS, Chief Judge, HALL, Circuit Judge,
                        and ARCARA, District Judge.[*]

        Seth Dolphy appeals from an Order of the United States

District Court for the Northern District of New York (Kahn,

J.) dismissing his petition for habeas corpus relief under

28 U.S.C. § 2254.  During jury selection in Dolphy's state

court trial on drug, weapon, and attempted assault charges,

---

        [*] The Honorable Richard J. Arcara, United States
District Court for the Western District of New York, sitting
by designation.

the prosecution used a peremptory challenge to strike the only African-American juror in the jury pool.  Dolphy, who is African-American, objected on <u>Batson</u> grounds, and the explanation given by the prosecution was that the juror was obese.  Because the record does not show that the trial court engaged in the third, critical step of the <u>Batson</u> analysis, we vacate the order of the district court and remand for further proceedings.

<div style="margin-left:50%">

ROBERT A. CULP, Esq., Garrison, New York , <u>for Petitioner-Appellant</u>.

LISA E. FLEISCHMANN, Assistant Attorney General, for Andrew W. Cuomo, Attorney General of the State of New York, <u>for Respondent-Appellee</u>.

</div>

DENNIS JACOBS, <u>Chief Judge</u>:

Seth Dolphy appeals from an Order of the United States District Court for the Northern District of New York (Kahn, J.) dismissing his petition for habeas corpus relief under 28 U.S.C. § 2254.  During jury selection in Dolphy's state court trial on drug, weapon, and attempted assault charges, the prosecution used a peremptory challenge to strike the only African-American in the jury pool.  Dolphy, who is African-American, objected through counsel on <u>Batson</u>

grounds. The explanation given by the prosecution was that the juror was obese. The trial judge denied the Batson objection on the ground: "I'm satisfied that is a race neutral explanation." Because the record does not show whether the trial court made an ultimate determination on the issue of discriminatory intent, we vacate the Order of the district court and remand for further proceedings.

**BACKGROUND**

Dolphy was indicted in March, 1997 on drug, weapon, and attempted assault charges. Jury selection began on September 3, 1997. Sixteen prospective jurors were initially called, seven of whom were peremptorily struck by the prosecution. Of the seven replacements, one was African-American. She said that she would be fair and open-minded and would decide any matter "based on the evidence." Asked if there was anything that would affect her impartiality, she said no.

The prosecution peremptorily struck the juror, and the defense immediately objected on the basis of Batson v. Kentucky, 476 U.S. 79 (1986), noting that the juror, like Dolphy, was African-American. During a chambers conference

3

on the objection, the trial court determined that the defense had made a prima facie showing under <u>Batson</u> and put the burden on the prosecution to advance a race-neutral explanation for its removal of the juror. The prosecutor said he struck the juror because of "her appearance." The specific feature of her appearance was her weight, as he explained:

> I do not select overweight people on the jury panel for reasons that, based on my reading and past experience, that heavy-set people tend to be very sympathetic toward any defendant.

The trial court asked whether the prosecutor was "saying that race had nothing to do with it," and the prosecutor responded "that's correct." The trial court then ruled:

> Very well. Strike will stand. Defense has its exception, record's preserved, that will be an issue.

Defense counsel immediately renewed the objection, arguing that the prosecutor had allowed overweight people on juries in other cases. The trial court responded:

> [T]hat's neither here nor there. I'm satisfied that is a race neutral explanation, so the strike stands. Defense has its exception.

The chambers conference ended and jury selection continued.

At the conclusion of jury selection, defense counsel

4

moved for a mistrial, noting that two of the seated jurors were overweight. The trial court observed that "overweight is a subjective term," tactfully suggested that the judge and defense counsel were both "a little overweight" and could stand to lose a few pounds, and opined that the excluded juror was (by contrast) "grossly overweight."

Dolphy was convicted on all counts, and the Appellate Division of the New York State Supreme Court affirmed the conviction. See People v. Dolphy, 257 A.D.2d 681, 685 N.Y.S.2d 485 (3d Dep't 1999). As to Batson, the Appellate Division concluded that the prosecution had presented a race-neutral explanation for the strike and that defendant's "bald contention that the explanation was pretextual" did not merit reversing the conviction. Id. The New York State Court of Appeals denied leave to appeal. See People v. Dolphy, 93 N.Y.2d 872, 689 N.Y.S.2d 434 (N.Y. 1999) (Table).

Dolphy filed this § 2254 petition pro se in the United States District Court for the Northern District of New York on September 11, 2000. The petition argued: (1) that the prosecution improperly removed the African-American juror from the jury pool; (2) that the prosecution made inflammatory remarks that denied Dolphy due process; and (3)

5

that Dolphy's trial counsel was constitutionally ineffective. The petition was referred to Magistrate Judge DiBianco, whose Report and Recommendation concluded that the trial court misapplied Batson when it accepted the prosecution's proffered race-neutral explanation without assessing credibility or pretext. The Magistrate Judge recommended denying Dolphy's petition on the prosecutorial misconduct and ineffective assistance of counsel claims.

Both parties filed objections. The district court adopted the Report and Recommendation with respect to prosecutorial misconduct and ineffective assistance, but rejected the Report with respect to Batson. The district court held that the required credibility finding was implicit in the trial court's rejection of the defendant's Batson challenge. Specifically, the court reasoned that neither Supreme Court precedent nor the precedent of this Circuit required a trial court to make an explicit credibility determination at the third stage of the Batson analysis. This Court granted a certificate of appealability on the Batson issue only.

**DISCUSSION**

We review the district court's decision to grant or deny habeas relief de novo. Jenkins v. Artuz, 294 F.3d 284, 290 (2d Cir. 2002). When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which we may grant a writ of habeas corpus only if the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). But if the federal claim was not adjudicated on the merits, "AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006).

Dolphy argues that the trial court unreasonably applied the Supreme Court's decision in Batson v. Kentucky because (1) the trial court failed to make a credibility finding at the third stage of the Batson analysis and (2) in the alternative, the trial court's acceptance of the proffered race-neutral explanation was objectively unreasonable. We

7

agree with Dolphy's first argument, because we cannot say that the trial court made a clear credibility finding.

The three stages of the <u>Batson</u> analysis are well-known: once a <u>prima facie</u> showing of purposeful discrimination has been made, the burden shifts to the prosecution to proffer a race-neutral explanation for the strike, at which point the court must determine whether the defendant has established purposeful discrimination. <u>Batson</u>, 476 U.S. at 96-98. "[T]he third step of the <u>Batson</u> inquiry requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." <u>Jordan v. Lefevre</u>, 206 F.3d 196, 200 (2d Cir. 2000) (internal quotation and citation omitted).

Trial courts applying the third <u>Batson</u> prong need not recite a particular formula of words, or mantra. <u>Galarza v. Keane</u>, 252 F.3d 630, 640 n.10 (2d Cir. 2001). An "unambiguous rejection of a <u>Batson</u> challenge will demonstrate with sufficient clarity that a trial court deems the movant to have failed to carry his burden to show that the prosecutor's proffered race-neutral explanation is pretextual." <u>Messiah v. Duncan</u>, 435 F.3d 186, 198 (2d Cir. 2006). However, we have repeatedly said that a trial court

8

must somehow "make clear whether [it] credits the non-moving party's race-neutral explanation for striking the relevant panelist."  Messiah, 435 F.3d at 198; see Galarza, 252 F.3d at 636 ("We have repeatedly emphasized that a trial court may not deny a Batson motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes."); Jordan, 206 F.3d at 200 ("Jordan now declares that the district court's conclusory statement that the prosecutor's explanations were race neutral did not satisfy Batson's third step.  We agree."); Barnes v. Anderson, 202 F.3d 150, 156 (2d Cir. 1999) (holding that "denial of a Batson motion without explicit adjudication of the credibility of the non-movant's race-neutral explanations for challenged strikes" constitutes error).

We cannot say that the trial court properly applied Batson in this case.  While the prosecution's proffered explanation was facially race-neutral, it rested precariously on an intuited correlation between body fat and sympathy for persons accused of crimes (seemingly without regard to the weight of the defendant).  Yet the trial court's initial ruling was made without inquiry or finding, as though the ground for making the strike was self-evident:

9

"Very well.  Strike will stand."  And when defense counsel immediately renewed his objection, the judge's words seemed to assume that a race-neutral explanation (Batson step two) was decisive and sufficient: "I'm satisfied that is a race neutral explanation, so the strike stands."  As in Jordan, such a conclusory statement does not necessarily indicate-- even by inference--that the trial court credited the prosecution's explanation, especially since (i) the judge's words suggested that the proffer of a race-neutral explanation was itself enough, and (ii) the explanation given here lends itself to pretext.  (Which side is favored by skinny jurors?)  Defense counsel later pointed out that several overweight jurors had been seated without objection, but the trial court rejected that further attack on the prosecutor's motives after visually assessing the jurors' relative obesity.  Our review of this point is further confounded because the trial court otherwise sidestepped the apparent inconsistency.

Because the trial court failed to assess the credibility of the prosecution's explanation, it follows that there was no adjudication of Dolphy's Batson claim on

10

the merits, and neither we nor the district court must defer to the trial court under AEDPA.  Spears, 459 F.3d at 203. Rather, the federal courts may determine, de novo, whether the peremptory strike of the juror violated Dolphy's constitutional rights.  Id.  We therefore vacate the district court's Order and remand this matter for further proceedings.  The district court may, in its discretion, hold a hearing to reconstruct the prosecutor's state of mind at the time of jury selection, and thereby determine whether the proffered race-neutral explanation for the striking of the African-American juror was pretextual; or, if the passage of time has made such a determination impossible or unsatisfactory, the district court may grant the writ contingent on the state granting Dolphy a new trial.  See Jordan, 206 F.3d at 202.